## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____ )
U.S. WOMEN'S CHAMBER OF COMMERCE )
)
*Plaintiff,* )
)       Civil Action No. 1:04CV01889
)       Judge Reggie B. Walton
v. )
)
)       ORAL ARGUMENT
U.S. SMALL BUSINESS ADMINISTRATION )       REQUESTED
)
and )
)
HECTOR V. BARRETO )
Administrator, )
U.S. Small Business Administration )
)
*Defendants* )
_____ )

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

Plaintiff U.S. Women's Chamber of Commerce respectfully submits this

opposition to Defendants' Motion to Dismiss. The Complaint alleges that the Small Business

Administration ("SBA") has failed to fulfill its Congressional mandate to conduct a study of

industries in which women-owned small businesses ("WOSBs") are underrepresented, in

violation of the Administrative Procedure Act ("APA").

The under-representation study is mandated by the Equity in Contracting for

Women Act of 2000 ("Act"), and is a prerequisite to the SBA's implementation of a government

contracting program designed to increase the number of contracts awarded to small businesses

owned by women. During the four years since the passage of the Act, the SBA has persistently

stymied the completion of the under-representation study and the implementation of the WOSB

program.  Instead of taking steps to fulfill its Congressional mandate, the Small Business

Administrator has pursued various avenues of delay, (including commissioning a "study of the

study" which has in turn been delayed), and has recently suggested that the program will never

be implemented.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants moved to

dismiss the Complaint for lack of standing and as precluded by the Small Business Act's anti-

injunction provision.  Both of Defendants' jurisdictional arguments lack merit.

Plaintiff's membership consists of hundreds of small businesses owned and

operated by women who have unsuccessfully bid on government contracts awarded by numerous

federal agencies.  Plaintiff falls squarely within the doctrines of organizational and associational

standing articulated by the D.C. Circuit and the Supreme Court of the United States.

Moreover, the Small Business Act's anti-injunction provision does not apply

where the agency Administrator exceeds the scope of his authority by failing to fulfill a

Congressional mandate within a reasonable period of time.  Congress intended the APA to

empower reviewing courts to compel agency action unlawfully withheld or unreasonably

delayed.  For these reasons, discussed more fully below, Defendants' motion to dismiss should

be denied.

**BACKGROUND**

In 1994, Congress established a government-wide five percent procurement goal for women-owned small businesses.  15 U.S.C. § 644(9)(1).  No federal agency has ever met its five percent goal.[1]

In order to increase WOSB success in bidding on government contracts, Congress passed the Equity in Contracting for Women Act of 2000, codified at 15 U.S.C. § 637(m).[2]  The Act requires the Small Business Administrator to conduct a study of industries in which women-owned small businesses are underrepresented with respect to federal procurement contracting.  15 U.S.C. § 637(m)(4).  The under-representation study is a prerequisite to the implementation of a program allowing contracting officers to award contracts to WOSBs on a restricted basis.  *Id.* § 637(m)(2).[3]  Congress envisioned that the SBA under-representation study would "mirror the 'benchmarking' study performed by the Department of Commerce for small disadvantaged businesses."  H. Rep. No. 106-879 at 5 (2000).  The Department of Commerce study examined

---

[1]  According to the Federal Procurement Data System, the highest utilization of WOSBs by federal agencies was just 2.98 percent in 2003, falling far short of the FASA's goal.  H Rep. No. 106-879 at 2 (2000).

[2]  *See* H.R. 4897, 106th Cong. (2000).

[3]  Specifically, the Act provides:

> a contracting officer may restrict competition for any contract for the procurement of goods or services by the Federal Government to small business concerns owned and controlled by women, if . . . (C) the contract is for the procurement of goods or services with respect to an industry identified by the Administrator [in the under-representation study].

15 U.S.C. § 637(m)(2)(C).

government contracting opportunities for various industry groups.  *See* 63 Fed. Red. 35714-01 (June 30, 1998).[4]

       Since 2000, the SBA has set, orally and in writing, a series of deadlines or timetables for fulfilling its statutory mandates.  The agency has missed every single one of its self-imposed deadlines for completing the required study and promulgating regulations to implement the program.  The SBA originally completed a draft study and proposed regulations in 2001.[5]  The SBA's 2001 Statement of Regulatory Priorities, published in the Federal Register, reported that the SBA was "drafting regulations that [would] implement a 'restricted competition' procurement program for [WOSBs]" and predicted that a proposed rule would be published in February 2002.[6]

       Neither the study nor the proposed regulations implementing the program were ever adopted.  Instead, two years after the statute was enacted, the SBA commissioned the National Academies of Science ("NAS") to review the draft study's methodology.  The NAS process itself has been delayed for almost a year.[7]

---

[4]  Significantly, in *Rothe Dev. Corp. v. U.S. Dept. of Defense*, 324 F. Supp.2d 840 (W.D. Tex. 2004), the court relied on the Commerce Department benchmarking study in upholding the constitutionality of a federal price adjustment program for small disadvantaged bidders. Specifically, the court opined that the Department of Commerce's study, among others, supplied statistical evidence documenting pervasive discrimination affecting minority groups.  *Id.* at 854-60.  The *Rothe* decision undermines the SBA's concern that a WOSB program based on the initial draft study would be susceptible to constitutional challenge.

[5]  E-mail from Melanie Sabelhaus, Deputy Administrator, SBA to Gloria Berthold, Marketing Outsource Associates, Inc. (June 8, 2004) (on file with author).

[6]  66 Fed. Reg. 61306, 61306-08 (Dec. 3, 2001).

[7]  The NAS originally projected completion in spring 2004, but the NAS requested and received a no-cost extension of the deadline.  The NAS website's estimated completion date for the methodological study is late fall 2004.  *See* National Academies of Science, CNST-1-03-04-A, Women-Owned Small Businesses in Federal Contracting, *at* http://www4.nas.edu/webcr.nsf/projectsearch.  This date has passed without the issuance of the (continued…)

In February 2001, the United States General Accounting Office ("GAO") released a report identifying issues related to federal contracting with WOSBs.[8]  The GAO's report responded to Congress's request that the agency review the federal government's progress in increasing public contracting with WOSBs, and identify measures to improve the government's performance in contracting with WOSBs.  The GAO interviewed several groups of government procurement officials.[9]  These officials identified the lack of a targeted program for contracting with WOSBs as a major obstacle to increasing federal contracting with WOSBs.  According to the GAO report, contracting officers generally agreed that "without a specific vehicle or targeted contracting program, agencies cannot award contracts to WOSBs as they can to some other small businesses and meet their WOSB contracting goals."[10]

Plaintiff is the pre-eminent national women's commercial business network.  Plaintiff's mission includes promoting economic opportunity for women small business owners in federal contracting.  The organization's 150,000 members include individuals and small business owners who have unsuccessfully bid on federal contracts with a host of government agencies, as well as career professionals, women's leadership organizations, and economic

_____

(footnote continued)

report.  Defendant Barreto reported that "[t]he National Academy [sic] has informed SBA that it expects to provide the Agency with a final draft of its analysis by the end of this month [January]."  Barreto Decl. ¶ 8.  No such report has been issued.

[8] *Federal Procurement: Trends and Challenges in Contracting with Women-Owned Small Businesses* (February 16, 2001), *available at* http://www.gao.gov/new.items/d01346.pdf.

[9] *Id.* at 3, 6, 22.  In conducting the study, the GAO interviewed numerous officials from the Procurement Executive Council, representatives from the Office of Small and Disadvantaged Business Utilization within numerous agencies, thirty contracting officers from four federal agencies that account for over eighty percent of government contract purchases each year, officials from the Office of Management and Budget's Office of Federal Procurement Policy, and SBA officials.  *Id.* at 4.

[10] *Id.* at 26.

development organizations committed to expanding public and private contracting opportunities for women business owners. Plaintiff represents the interests of its members in significant and substantial matters before Congress, the Executive Branch, and independent agencies. Plaintiff has devoted considerable resources to its core objective: increasing WOSB government contract awards by seeking SBA implementation of Congress's WOSB procurement program.

## ARGUMENT

**A.    The Court Must Accept Plaintiff's Allegations As True, or Resolve Disputed Jurisdictional Facts, in Deciding the SBA's Motion to Dismiss**

A court has a duty to exercise its jurisdiction. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716, 116 S.Ct. 1712, 1720-21 (1996) (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 821, 96 S.Ct. 1236, 1248 (1976)) ("[F]ederal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them'") (internal quotations omitted).

Of course, "for purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206 (1975). Further, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 2137 (quoting *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990)).

Where a defendant has challenged the factual basis of the court's jurisdiction, "the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Republic*

*of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000). The D.C. Circuit has also instructed that "though the trial court may rule on disputed jurisdictional facts at any time, if they are inextricably intertwined with the merits of the case it should usually defer its jurisdictional decision until the merits are heard." *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 198 (D.C. Cir. 1992) (citing *Land v. Dollar*, 330 U.S. 731, 67 S.Ct. 1009 (1947)).

Defendants have taken the unusual step of attaching two declarations of agency officials, including a declaration of SBA Administrator Barretto, to the dismissal motion. While the declarations do not appear to relate to Defendants' jurisdictional defenses, if the Court decides that it must resolve contested facts regarding the Administrator's pronouncements in order to decide the jurisdictional issue, it should defer its jurisdictional decision until it decides the merits of the case. Because the Plaintiff has standing to bring this suit, and the APA authorizes suits to compel agency action unreasonably delayed or denied, Plaintiff considers resolution of the disputed allegations unnecessary at this stage of the case.

**B.    Plaintiff Has Constitutional and Prudential Standing to Compel the SBA to Fulfill Its Statutory Mandate**

Plaintiff satisfies both the constitutional and the prudential requirements of standing to bring an APA action. As this Court has recently reiterated: "[i]t is a fundamental axiom that pursuant to Article III of the Constitution, federal courts are vested with the power of judicial review extending only to 'Cases' and 'Controversies.'" *Seegars v. Ashcroft*, 297 F. Supp. 2d 201, 207 (D.D.C. 2004) (Walton, J.). In order to establish Article III standing to bring a claim in federal court, the plaintiff must have suffered "an (1) 'injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not

conjectural or hypothetical' -- (2) which is 'fairly traceable' to the challenged act, and (3) 'likely' to be 'redressed by a favorable decision.'"[11]

Prudential standing encompasses "the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Elk Grove Unified Sch. Dist. v. Newdow,* 124 S.Ct. 2301, 2309 (2004) (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324 (1984)).  This Circuit has held that "[t]he law of standing was greatly modified by the passage of the Administrative Procedure Act" and that the APA's "generous review provisions" must be given a "hospitable" interpretation.[12]  As the Supreme Court has frequently recognized, the strong presumption that Congress intends judicial review of administrative action cannot be overcome without clear and convincing evidence of a contrary legislative intent.") *Franklin v. Massachusetts*, 505 U.S. 788, 816, 112 S.Ct. 2767, 2783 (1992) (internal citations and quotation marks omitted); *see also Rusk v. Cort*, 369 U.S. 367, 379, 82 S.Ct. 787, 794 (1962) (citing the "broadly remedial provisions of the Administrative Procedure Act"); *FAIC Secs., Inc. v. FDIC*, 768 F.2d 352, 356-57 (D.C. Cir. 1985) (use of "aggrieved" language in APA indicates congressional intent to pare back traditional prudential standing limitations).

---

[11]  *Mahorner v. Bush*, 224 F. Supp. 2d 48, 49-50 (D.D.C.) (Walton, J.), *aff'd*, 2003 U.S. App. LEXIS 18930 (D.C. Cir. 2002) (per curiam) (quoting *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996)) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136-37 (1992)).

[12]  *Scanwell Labs. v. Shaffer*, 424 F.2d 859, 865, 866 (D.C. Cir. 1970), *partially superseded by statute as stated in*, *Novell, Inc. v. United States*, 109 F. Supp. 2d 22 (D.D.C. 2000) (stating that the *Scanwell* holding as to concurrent jurisdiction of district courts with the Court of Federal Claims to entertain bid protests was superseded by federal statute); *see LeBoeuf, Lamb, Greene & Macrae, LLP v. Abraham*, 347 F.3d 315, 325 (D.C. Cir. 2003) (recognizing continued validity of *Scanwell* reasoning).

### 1.    Plaintiff Has Organizational Standing To Compel SBA Action

Plaintiff has standing to bring this suit on its own behalf because it has suffered discrete, tangible injury from the SBA's unreasonable delay in implementing the Equity in Contracting for Women Act, and an order from this Court requiring the SBA to implement the Act would redress these injuries.[13]   Moreover, the Chamber falls within the zone of interests protected by the statute.

Plaintiff was founded for the express purpose of assisting WOSBs in obtaining federal procurement contracts.  The Chamber's strategic plan identifies "Advancing the Opportunities of Women in Procurement Markets" as a continuing major objective.  By failing to identify underrepresented industries in order to implement the program, the SBA had directly harmed plaintiff by striking at the heart of the organization's purpose and diminishing its effectiveness in assisting members in pursuing opportunities mandated by Congress.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 1124 (1982) (recognizing legally-cognizable injury from government frustration of organization's counseling and referral efforts); *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 937-39 (D.C. Cir. 1986) (same).

The SBA's obstructionism has frustrated the organization's primary objective to promote economic opportunity for its WOSB members, and has required plaintiff to divert and expend considerable resources advocating that the SBA implement what Congress long ago required, instead of assisting its members in bidding on contracts under the new WOSB program.

---

[13]  An organization does not bear a higher standing burden than an individual, but rather must satisfy the identical constitutional and prudential criteria.  *See Spann v. Colonial Village*, 899 F.2d 24, 26-31 (D.C. Cir. 1990); *Metro. Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise*, 501 U.S. 252, 264-65, 111 S.Ct. 2298, 2306 (1991).

At a summer 2003 National Procurement Summit, constituent members from 28 states forcefully vocalized their interest in the program's implementation.

Defendants mischaracterize Plaintiff's injury as a mere setback to the organization's abstract societal interests." Defs.' Mot. at 8. To the contrary, Plaintiff has suffered palpable injury in the form of actual financial loss. As the Supreme Court has recognized, "[s]uch concrete and demonstrable injury to the organization's activities -- with the consequent drain on the organization's resources -- constitutes far more than simply a setback to the organization's abstract social interests." *Havens Realty Corp.*, 455 U.S. at 379, 102 S.Ct. at 1124. Plaintiff "has had to devote significant resources to identify and counteract" the defendant's illegal actions. *Id*. Plaintiff has expended considerable financial and human resources seeking to convince the SBA to do what Congress has required it to do. Plaintiff's activities have included testifying at SBA and other public meetings including before the House Committee on Small Businesses; writing to and meeting with SBA officials to urge compliance; responding to requests from its members for information on the status of the program; and conducting face-to-face meetings with SBA officials, including the meeting with Administrator Barreto referenced in the complaint, which is described in more detail in the attached declaration.

Defendants' claim that Plaintiff's injury is merely "speculative" is similarly flawed. As the D.C. Circuit noted in *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996), Defendants' conduct directly conflicts with the Plaintiff's mission. The presence of a conflict between the Defendant's conduct and the organization's goals ensures that a Plaintiff's injury is not "speculative" and the organization need only demonstrate actual injury. *Id*.

One of Plaintiff's primary objectives is to assist women-owned businesses in obtaining federal contracts. Contracting officers have identified the program as a necessary tool to increase WOSB utilization in federal procurement. SBA obstructionism directly hinders Plaintiff's pursuit of the goal embodied in Congress's mandate. Consequently, Plaintiff has satisfied the requirements of organizational standing by alleging actual injury traceable to defendants' unreasonable delay and remediable through the APA.

Defendant does not contest that Plaintiff easily satisfies prudential standing requirements. As the primary organization in the United States advocating for women-owned small businesses in federal contracting, Plaintiff's objectives fall well within the zone of interests protected by the Equity in Contracting for Women Act.

### 2. Plaintiff Has Associational Standing to Compel Unreasonably Delayed SBA Action

Plaintiff also satisfies the criteria for associational standing. "[A]n association has standing to bring suit on behalf of its members," when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[14]

Defendants do not dispute that Plaintiff's members have suffered concrete, actual, legally-cognizable injury. Nor does the Government dispute that the interests the Chamber seeks to protect are germane to its purpose; that the claim for relief requires the participation of Plaintiff's members; and that there is no prudential bar to Plaintiff's associational standing.

---

[14] *Friends of Tilden Park, Inc. v. District of Columbia*, 806 A.2d 1201, 1207 (D.C. Cir. 2002) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441 (1977)); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-84, 120 S.Ct. 693, 626-30 (2000).

Defendants focus instead on the elements of traceability and redressability.  Defendants' analysis misapplies the relevant legal standard of causation and ignores the procedural injury suffered by Plaintiff's members.

<strong>a)    Plaintiff's Members Have Suffered Injuries in Fact</strong>

Plaintiff's members have alleged numerous legally-cognizable injuries from the SBA's unreasonable delay.  Certain members have suffered economic injury by losing contracts conducted without the Women's Procurement Program.  These losses also include unrecouped bid preparation costs as well as lost business revenue and business opportunities.  *See LeBoeuf et al*, 347 F.3d at 325-26 (recognizing that a claim for bid preparation costs is legally cognizable under federal standing analysis).

Plaintiff's members have also suffered diminished and lost relationships with government agencies due to past, present, and prospective failed bids.  Additionally, members have experienced diminished and lost relationships with the government because the SBA has denied them the particular relationship with the SBA and with other federal agencies to which they are legally entitled, as designated women-owned small businesses in underrepresented industries.  *See Merriam v. Kunzig*, 476 F.2d 1233, 1240-43 (3d Cir. 1973) (recognizing injury from diminishment of advantageous relationship with government).

Finally, Plaintiff's members have suffered procedural injury based on Defendants' failure to comply with Congress's statutory mandates.  It is well-settled that injury suffered as a result of an illegal procurement process is legally cognizable for standing purposes.[15]  Such

---

[15]  *See Scanwell Labs.*, 424 F.2d at 864-65, *partially superseded by statute on other grounds as stated in*, *Novell, Inc.*, 109 F. Supp. 2d at 24-25 (stating that the *Scanwell* holding as to concurrent jurisdiction of district courts with the Court of Federal Claims to entertain bid protests (continued…)

injury is concrete and actual because Plaintiff's members' material interests are compromised by the SBA's failure to implement the Act.  *See Scanwell Labs.*, 424 F.2d at 864.

> **b)**    **Plaintiff's Injuries are Fairly Traceable to the SBA's Unreasonable Delay and Likely to Be Redressed by a Favorable Decision of this Court**

Defendants commit two legal errors in denying the causal relationship between the SBA's unreasonable delay and Plaintiff's injuries, and the redressability of these injuries.  First, the Government misapplies the relevant legal standards.  Second, the Government ignores the procedural injury that would be redressed by compelling SBA compliance with statutory mandates.

Defendants contend that Plaintiff must identify particular contracts denied to members as a result of the SBA's failure to implement the Women's Procurement Program.  Defendants' argument finds no support in the governing law.  Plaintiff need not prove "but for" causation between the SBA's unlawful conduct and the under-utilization of WOSBs.  Rather, Plaintiff must allege a "substantial probability" of causation and redressability.  *Warth*, 422 U.S. at 504, 95 S.Ct. at 2708; *see also Defenders of Wildlife*, 504 U.S. at 560-61, 112 S.Ct. at 1236-37.

Plaintiff's allege that certain of its members "have failed to gain federal contracts without the implementation of the women's procurement program."  Defendants argue that Plaintiff cannot establish the standing requirement of traceability because the SBA has not conducted its congressionally-mandated study to determine the under-representation of women-

---

(footnote continued)

was superseded by federal statute); *see LeBoeuf*, 347 F.3d at 325 (recognizing continued validity of *Scanwell* reasoning).

owned small businesses in specific industries.  Defendants thus impose a "catch-22":  illegally refusing to implement the mandates of the Act, while claiming that its refusal to implement the Act insulates its actions from review.  Contrary to the SBA's self-serving contention that underrepresented industries are difficult to identify, Defendants have ample evidence of such under-representation.  The SBA's draft study presumably identifies underrepresented industries.  The 2002 GAO Report substantiates the existence of under-representation and the need for the WOSB procurement program.  The federal government has never reached its congressionally-mandated minimal goal of awarding 5% of federal contracts to women-owned small businesses.  It is unsound for Defendants to claim that, simply because the SBA has failed to conduct the study mandated by Congress, this Court cannot conclude that there is a substantial probability that certain historically male-dominated industries will be deemed "underrepresented," and that WOSB's will be awarded a greater percentage of government contracts if competition for contracts is restricted to underrepresented bidders.

In addition, Plaintiff's associational standing does not depend on whether the Women's Procurement Program would directly redress WOSB member's economic injuries.  Defendants ignore the procedural injury suffered by Plaintiff's members, who have standing to challenge unlawful government action akin to disappointed bidders.  The D.C. Circuit has long held that unsuccessful bidders for government contracts have standing to challenge an unlawful bid process.  *See Scanwell Labs.*, 424 F.2d at 864-65.  Plaintiff's members have standing analogous to that of disappointed bidders.  To prove standing based on procedural injury, a disappointed bidder does not need to establish that it would have received the contract but for the government's illegal action.  If U.S. courts were to require the unassailable causation analysis relied on by Defendants, claimants protesting the loss of bids would never have standing to bring

14

suit because they could not prove to a certainty that they would have won their contracts but for the alleged illegal government conduct.

Instead, a disappointed bidder may bring suit to redress its procedural injury caused by illegal government action. "The public interest in preventing the granting of contracts through arbitrary or capricious action can properly be vindicated through a suit brought by one who suffers injury as a result of the illegal activity." *Scanwell*, 424 F.2d at 864. The Court elaborated:

> When the Congress has laid down guidelines to be followed in carrying out its mandate in a specific area, there should be some procedure whereby those who are injured by the arbitrary or capricious action of a governmental agency or official in ignoring those procedures can vindicate their very real interests, while at the same time furthering the public interest. These are the people who will really have the incentive to bring suit against illegal government action, and they are precisely the plaintiffs to insure a genuine adversary case or controversy.

*Id*. at 864. Procedural injury has also been recognized by the Supreme Court: "We do *not* hold that an individual cannot enforce procedural rights; he assuredly can so long as the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." 504 U.S. at 573, 572, 112 S.Ct. at 2143.[16]

Plaintiff's WOSB member businesses have bid thousands of times on federal contracts and continue to actively bid on these contracts. Many of these businesses have great success in the private sector, or with state and local governments, but face mounting losses from their federal bids, a significant market failure. To address this failure, Congress instructed the SBA to assist women-owned small businesses, and the SBA has not followed this mandate. The

---

[16]  *See also LeBoeuf*, 347 F.3d at 325; *Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052 (1st Cir. 1987); *B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 718-723 (2d Cir. 1983) (Friendly, J.); *Merriam v. Kunzig*, 476 F.2d 1233 (3d Cir. 1973).

Plaintiff and its members are the parties that have an incentive to bring suit to redress the illegal action of the SBA. An order of this Court compelling the SBA to comply with the mandate of Congress would redress the on-going procedural injury forced upon the Chambers' members by the SBA's unreasonable delay.

Significantly, the D.C. Circuit case relied upon to support Defendants' flawed causation analysis in fact supports Plaintiff's case. In *National Maritime Union v. Commander, Military Sealift Command*, 824 F.2d 1228, 1237-38 (D.C. Cir. 1987), the D.C. Circuit recognizes, in the final portion of the case ignored by Defendants, that those who suffer harm from participation in an unlawful government procurement process have standing to seek judicial redress. Defendants falsely analogize Plaintiff's position to the labor unions that lacked standing to challenge the Military Sealift Command's contracting decision. However, the Court distinguished the standing of non-bidder labor unions from the procedural injury-based standing of disappointed bidders. Recognizing that "[d]isappointed bidders have had standing in this circuit to challenge government procurements" for decades, the Court concluded that "if [a disappointed bidder] were a plaintiff in this litigation, its implicit assurance to this court that it 'stands ready, willing and able' to rebid would indicate that exercise of the judicial remedial power would not be in vain." *Id.* at 1237 (quoting *Orange Park Florida T.V., Inc. v. FCC*, 811 F.2d 664, 672 & n.18 (D.C. Cir. 1987))

Although the *National Maritime Union* plaintiffs were not the parties directly injured by the government's alleged illegal acts, the court found that those who had been directly injured would have standing to sue. Plaintiff and its members are directly injured by the SBA's illegal acts, and this Court is able to redress those injuries by requiring the SBA to comply with the Equity in Contracting for Women Act.

### C.    The Small Business Act's "Anti-Injunction" Provision Does Not Preclude the Court from Compelling the SBA to Conduct the Mandatory Study Within A Reasonable Time

For over four years, the SBA has flouted Congress's command to conduct a study that will provide the foundation for a WOSB procurement program.  Defendants argue that the Court is precluded from compelling agency action because 15 U.S.C. § 634(b)(1) prohibits the issuance of an injunction against the Administrator.  Defendants' argument gives short shrift to the APA, which explicitly authorizes reviewing courts to compel agency action unreasonably delayed or denied.  The so-called "anti-injunction" provision does *not* prohibit injunctive relief where the Administrator has acted beyond the scope of his authority by unreasonably delaying, and potentially permanently obstructing, a Congressional mandate.  Neither the text nor the legislative history of the anti-injunction provision suggest that Congress intended to restrict a court's power to compel agency action under the APA.

### 1.    The "Anti-Injunction" Provision Does Not Apply Where the Administrator Exceeds the Scope of His Authority

The Administrator's unreasonable delay in implementing the agency's statutory mandate exceeds the scope of his lawful authority, and thus is not immune from injunctive relief.  The Small Business Act provides that "the Administrator may sue and be sued in . . . any United States District Court . . .; but no attachment, injunction, garnishment, or other similar process, mense or final, shall be issued against the Administrator or his property."  15 U.S.C. § 634(b)(1).  Courts interpreting the no-injunction provision have concluded that "when the Administrator acts beyond the scope of his authority, 15 U.S.C. § 634(b)(1) does not preclude injunctive action."  *See, e.g.*, *Valley Forge Flag Co., Inc. v. Kleppe*, 506 F.2d 243, 245 (D.C. Cir. 1974); *Dubrow v.*

*SBA*, 345 F. Supp. 4, 7 (C.D. Ca. 1972); *Ricks v. United States*, 434 F. Supp. 1262, 1272 (S.D. Ga. 1976).[17]

Congress added anti-injunction provisions similar to § 634(b)(1) to agencies' enabling statutes to bar the attachment of agency funds and other interference with agency functioning attendant to "sue and be sued" clauses.  *See Ulstein Maritime, Ltd, et al. v. United States, et al.*, 833 F.2d 1052, 1056 (1st Cir. 1987).[18]  As the court in *Ulstein* noted, the no-injunction language protects the agency's internal workings and prohibits judicial orders attaching agency funds, but "does not provide blanket immunity from every type of injunction. In particular, it should not be interpreted as a bar to judicial review of agency actions that exceed agency authority where the remedies would not interfere with internal agency operations."  *Id.*  at 833 F.2d at 1057.

The relief requested by Plaintiff under the APA will not attach agency funds or otherwise interfere with the agency's internal workings.  Plaintiff is simply requesting that the Court require Defendants to do what Congress required it to do in the Equity in Contracting for Women Act:  conduct a study that is a prerequisite to establishing a WOSB program.  The Administrator has failed to fulfill this simple Congressional mandate.  Thus, a Court order compelling Defendants to comply with the mandates of the Act is not barred by 15 U.S.C. § 634(b)(1).

---

[17]  Courts interpreting other agencies' enabling statutes with similar no-injunction language have reached the same conclusion.  *See, e.g., Canterbury Career School, Inc. v. Riley*, 833 F. Supp. 1097, 1104 (D. N.J. 1993); *DRG Funding Corp. v. Sec. of Housing and Urban Dev., et al.*, 1988 WL 90107, at *3 (D.D.C. 1988)

[18]  For an analysis of the origin and purpose of the "sue and be sued" clauses in agency enabling statutes, and their relationship to anti-injunction provisions, see *FHA v. Burr*, 309 U.S. 242, 60 S.Ct. 488 (1940).  *See also Related Industries, Inc. v. United States*, 2 Cl. Ct. 517, 522 (Ct. Cl. 1983).

2.    **The "Anti-Injunction" Provision Does Not Preclude Relief Under the APA for Unreasonably Delayed Agency Action.**

By exceeding the scope of his authority through unreasonable delay, the SBA has violated the APA's command to conclude a matter presented to it . . . within a reasonable time," 5 U.S.C. § 555(b).  The APA requires a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed."  *Id.* § 706(a).  While the APA does not confer an independent grant of jurisdiction, sections 555(b) and 706(a) express Congress's intent to compel agencies to complete mandatory obligations within reasonable time frames.  *Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("*TRAC*").  Defendants' anti-injunction provision arguments have been deemed "irrelevant" in the context of an APA suit. *Oklahoma Aerotronics, Inc. v. United States*, 661 F.2d 976, 977 (D.C. Cir. 1981).[19]

The D.C. Circuit has articulated a four factor test to assess "unreasonable delay" claims under the APA:

> [T]o determine whether an agency's delay is unreasonable . . . the court should ascertain [1] the length of time that has elapsed since the agency came under a duty to act[; [2] judge] the reasonableness of the delay . . . in the context of the statute which authorizes the agency's action[;] . . . [3] examine the consequences of the agency's delay[; and] [4] give due consideration in the balance to any plea of administrative error, administrative convenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources.

---

[19]  Other courts in this Circuit have reached the same conclusion and have granted injunctive relief under the APA against the SBA and other agencies whose enabling statutes contain similar no-injunction provisions.  *See, e.g., The McCarty Corp. v. Rice*, 1989 WL 1665904, at *3 (D.D.C. 1989) (granting plaintiff's motion for preliminary injunction and concluding that the court may "hold unlawful and set aside an SBA decision that is arbitrary, capricious, or otherwise not in accordance with law"); *Wilfred Am. Educ. Corp. v. Alexander*, 1992 WL 464232, at *2 (D.D.C. 1992), *aff'd*, 987 F.2d 821, 823 (D.C. Cir. 1993) (granting plaintiff's motion for preliminary injunction against the Secretary of Education and concluding that "[d]efendant's additional argument that plaintiff cannot obtain injunctive relief against the Secretary is without merit").

*In re Int'l Chemical Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992) (internal quotations and citations omitted).[20]

"The ultimate issue . . . [is] whether the time the [agency] is taking to act . . . satisfies the 'rule of reason.'"  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).  That determination will depend "upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."  *Id.*  Resolution of a claim of unreasonable delay requires consideration of the particular facts and circumstances before the court.  *Id.* at 1100.

All four factors suggest that the SBA's egregious delay violates the APA.  The President signed the Act into law more than four years ago.  Defendants have failed to meet every single one of its self-imposed deadlines for completing the required study.  With no resolution in sight, the Administrator's remarks to Plaintiff  cast serious doubt on the SBA's willingness to comply with its Congressionally mandated duty to conduct an under-representation study.  Defendants' utter failure to meet any of their self-imposed deadlines compels the conclusion that the SBA's delay is unreasonable.  *See United Steelworkers of Am. v. Rubber Mfrs. Ass'n*, 783 F.2d 1117, 1119 (D.C. Cir. 1986) (per curiam) ("In a case such as this, involving allegedly unreasonably delayed agency action, the court must consider the agency's performance record and its proposed timetable for completing its work.  In that context, the court considers the specifics of the agency's proposed timetable highly relevant information.").

---

[20]  *See also In re United Mine Workers of Am. Inl't Union*, 190 F.3d 545, 549 (D. C. Cir. 1999) (quoting *TRAC's* six-factor test for unreasonable delay, 750 F.2d at 80).  For purposes of this motion, the factors identified in the two tests are essentially the same.  *See Biodiversity Legal Found. v. Norton*, 285 F. Supp.2d 1, 12 n.13 (D.D.C. 2003) (identifying both tests but applying *Chemical Workers'* factors).

Although no court has established a "*per se* rule as to how long is too long" to wait for agency action, the D.C. Circuit has stated that that "a reasonable time for agency action is typically counted in weeks or months, not years." *In re American Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (internal citations omitted). *See also Midwest Gas Users Assoc. v. Fed. Energy Regulatory Comm.*, 833 F.2d 341, 359 (D.C. Cir. 1987) ("This court has stated generally that a reasonable time for an agency decision could encompass months, occasionally a year or two, but not several years or a decade") (internal quotations omitted); *Pub. Citizen Health Research Group v. Brock*, 823 F.2d 626, 629 (D.C. Cir. 1987) (six year delay "treaded at the very lip of the abyss of unreasonable delay"); *Air Line Pilots Ass'n Inl't c. Civil Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984) (concluding that a five-year delay was unreasonable); *Pub. Citizen Health Research Group v. Auchter*, 702 F.2d 1150, 1157-59 (D.C. Cir. 1983) (per curiam) (finding that a three-year delay was unreasonable; *MCI Telecommunications Corp. v. FCC*, 627 F.2d 322, 338-342 (D.C. Cir. 1980) (finding a four-year delay to be unreasonable).

Defendants' argument that any adverse consequences of the delay are mitigated by the availability of other programs and resources that benefit women-owned small businesses, as described on SBA's internet site, is irrelevant to the Court's determination of unreasonable delay under the APA. Even assuming for purposes of argument – although the statistical evidence is quite to the contrary – that Defendants' claim is true, these "mitigating" circumstances have nothing to do with the Court's power under the APA to compel unreasonably delayed agency action.

Defendants resort to the thinly-veiled policy argument that "the WOSB contracting program will inevitably disadvantage businesses that are not eligible to participate in

the program by reducing the number of contracting opportunities that would otherwise be available to those businesses" and invoke the alleged need to "insure that the program is soundly-based so as to avoid unnecessary harm to innocent third parties."  It is Congress's prerogative, and not the role of other branches to determine whether and how to establish a procurement program beneficial to WOSBs.  Congress made precisely this policy judgment in 2000, and the SBA has abrogated its responsibility to take foundational steps to implement the program ever since the Act was passed.  Defendants' invitation to the Court to substitute the agency's policy views for its own statutory analysis under the APA must be rejected.

Finally, Defendant Barreto recently admitted that the SBA has no intention of implementing the WOSB procurement program.  Defendants attach two declarations to their Motion to Dismiss to support their argument that the delay is due to constitutional concerns about the study.  *See* Barreto Decl. and Barrera Decl.  However, the attached Declaration of Margot Dorfman illustrates that Defendants' declarations do not accurately portray the September 29, 2004 conversation between Defendant Barreto and other SBA officials and Plaintiff's representatives Margot Dorfman and Terry Williams.  *See* Declaration of Margot Dorfman, attached hereto as Exhibit A.

At this September 29, 2004 private meeting, Ms. Dorfman and Ms. Williams asked Defendant Barreto when the Act would be implemented.  Defendant Barreto responded that if SBA implemented the Act, everyone would want one and used Latinos as an example.  Attempting to obtain more specific information, Ms. Dorfman and Ms. Williams inquired again as to when the Act would be implemented.  Defendant Barreto responded, in effect, that the goals in the Act are meaningless and that the agency would suffer no consequences if it failed to meet the goals.  When asked again about the timeframe for implementing the Act, Defendant

Barreto told Ms. Dorfman and Ms. Williams that more time was needed to complete the NAS study. Pressed to project a completion date for the study, Defendant Barreto refused to supply one. Ms. Williams stated that it was reasonable to ask when the Act would be implemented because the Act was passed four years ago and little progress had been made since that time. Defendant Barreto then replied that the Administration "ha[d] no intention of implementing this program." *See* Dorfman Decl.

Contrary to Defendants' arguments in their Motion to Dismiss and attached Declarations, Defendant Barreto's statement implied that the study would languish and the program would never be implemented, completely divorced from alleged constitutional concerns about the study. By willfully ignoring the Congressional mandates of the Act, Defendant Barretto has acted outside the scope of his lawful authority. Therefore, the Court should exercise its jurisdiction under the APA to grant the requested injunctive relief.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Complaint should be denied in its entirety.

Respectfully submitted,

_____/s/_____
Linda J. Morgan (D.C. Bar No. 929414)
Sarah L. Wilson (D.C. Bar No. 443350)
Carrie A. Harney (D.C. Bar No. 485629)
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 662-6000

Dated: February 8, 2005

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____ )
U.S. WOMEN'S CHAMBER OF COMMERCE )
)
*Plaintiff,* )
)        Civil Action No. 1:04CV01889
)        Judge Reggie B. Walton
v. )
)
U.S. SMALL BUSINESS ADMINISTRATION )
)
and )
)
HECTOR V. BARRETO )
Administrator, )
U.S. Small Business Administration )
)
*Defendants* )
_____ )

## PROPOSED ORDER DENYING DEFENDANTS' MOTION TO DISMISS

UPON CONSIDERATION of Defendants' Motion to Dismiss, the memoranda supported in support of and in opposition to that motion, applicable legal authorities, and the entire record herein, it is

ORDERED, that Defendants' motion should be, and hereby is, DENIED.

IT IS SO ORDERED on this _____ day of _____, 2005.

_____
Reggie B. Walton
United States District Judge